UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**DOUGLAS SHANE TAMCKE**,

Debtor.

Case No. **09-60833-12**

MEMORANDUM of DECISION

At Butte in said District this 8th day of November, 2011.

In this Chapter 12 bankruptcy, the Chapter 12 Trustee, James D. Volk, filed on June 14, 2011, a "Motion for Order Terminating Employment of Realtor James C. Lane of Realty West/Lane & Associates, to Direct Debtor to Negotiate New Listing With Big Sky Brokers, and Notice," to which Debtor filed opposition. On September 29, 2011, Debtor and the Trustee filed a Stipulation to Submit Dispute on Agreed Facts, which agreed facts are as follows:

a.   Kimberly Lowry and the Debtor reside together on the Debtor's property. They have resided together for approximately 1 year. Ms. Lowry and the Debtor do not hold themselves out to the public as husband and wife; they do not file joint income tax returns; they do not own joint bank accounts; they do not own property together. Ms. Lowry's children live with her and with the Debtor. Ms. Lowry does not pay any of the Debtor's bills nor does the Debtor pay any of Ms. Lowry's bills. Ms. Lowry and the Debtor are not married.

b.   Ms. Lowry is a licensed real estate person having received her license on February 24, 2010. On that date Ms. Lowry associated with Lane & Associates, Realty West

1

under the supervision of Diana Lane, the wife of James Lane. Ms. Lowry's real estate sales practice is focused primarily on residential properties although she has had one agricultural listing. Ms Lowry is not involved in any aspect of the Debtor's listing at Lane & Associates.

      c.      This case was filed on May 10, 2009 as a Chapter 13 case. On June 4, 2009, the Debtor filed his application to employ James C. Lane as realtor [Doc. # 21]; the application was approved by an order of the Court dated June 5, 2009 [Doc. # 23]. The listing agreement attached to the application described the property listed as Section 3,343.9 acres more or less. On motion of the Debtor [Doc. # 42], the case was converted to one under Chapter 12 by an order of this Court on July 22, 2009 [Doc. # 58]. On October 1, 2009 a new application to employ James C. Lane was filed [Doc. # 74]. This employment application was approved by an order of the Court dated October 2, 2009 [Doc. # 78]. Following the denial of confirmation of the Debtor's Second Amended Chapter 11 Plan, the Debtor entered into a new listing agreement with James Lane on February 1, 2010, listing additional properly. All or portions of the Debtor's property has been listed with James Lane, since the commencement of this case.

      d. The Trustee is satisfied with and does not dispute the Debtor's marketing strategy.

In addition to the above agreed facts, the Trustee filed a brief in support of the Motion on October 13, 2011; Debtor filed a brief in opposition on October 14, 2011.

The Trustee requests removal of James C. Lane as a real estate professional in this case on grounds he is no longer disinterested because Debtor's girlfriend, with whom Debtor resides, is employed by Realty West/Lane & Associates. The Trustee argues that Ms. Lowry has "little, if any, interest in seeing [Debtor's] home sold" because Ms. Lowry and her children would then have to find another place to live. Debtor counters that no facts exist "which suggest that Lane is

2

a creditor or an insider, has been an employee of the Debtor, or has an interest materially adverse to the estate by reason of direct or indirect relationship with the Debtor.

Debtor filed his first application to approve James C. Lane's employment on June 4, 2009. In an attached affidavit, James C. Lane affirmed under oath that he had no connection with Debtor, his creditors or any other party in interest and was a "disinterested person" as that term is defined at 11 U.S.C. § 101(14). After conversion of this case from Chapter 13 of the Bankruptcy Code to Chapter 12, Debtor filed a second application to employ James C. Lane on October 1, 2009. James C. Lane again affirmed his disinterestedness.

Employment of professionals is permitted under 11 U.S.C. § 327(a), which reads:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

The term "disinterested person" is defined at 11 U.S.C. § 101(14) as a person that:

> (A) is not a creditor, an equity security holder, or an insider;
>
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

James C. Lane is not a creditor or an equity security holder and has not, within 2 years before the date of Debtor's petition date, served as a director, officer, or employee of Debtor. Thus, James C. Lane is only disinterested if he is an insider and has an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct

3

or indirect relationship to, or connection with Debtor. When a debtor is an individual, such as in the instant case, an insider includes a "relative of the debtor or a general partner of the debtor[.]" 11 U.S.C. § 101(31)(A)(i).

The Trustee relies on *Freund v. Heath (In re McIver)*, 177 B.R. 366 (Bankr. N.D.Fla 1995) and *Walsh v. Dutil (In re Demko)*, 264 B.R. 404 (Bankr. W.D.Pa. 2001), in support of his request for removal of James C. Lane. In *McIver*, the Court examined whether a transfer by the debtor to his live-in girlfriend was a preference under § 547. Because the live-in girlfriend was not a statutorily defined "insider," the court, adopting the standard articulated by the Ninth Circuit Bankruptcy Appellate Panel, concluded that an insider relationship existed "where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of . . . dealings between the parties." *McIver*, 177 B.R. at 370, quoting *Friedman v. Sheila Plotsky Brothers, Inc. (In re Friedman)*, 126 B.R. 63 (9th Cir. BAP 1991).

*Demko*, like *McIver*, involved a trustee's action to recover, pursuant to § 547(b), a payment made by the debtor to a man with whom she was cohabiting. The boyfriend in *Demko* argued he was not an insider because he did not fall within the statutory definition of insider. The court disagreed, concluding:

> Any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny may qualify as an "insider". *Butler v. David Shaw, Inc.*, 72 F.3d 437, 443 (4th Cir.1996).
>
> The true test of "insider" status is whether one's dealings with the debtor cannot accurately be characterized as arm's-length. *In re Craig Systems Corporation*, 244 B.R. 529, 539 (Bankr.D.Mass.2000). The emphasis is on the nature of the relationship between debtor and the other person, especially on whether their relationship gave the other person the power or influence to have a

4

debt owed to it repaid. The relationship must involve something more than a mere debtor-creditor relationship. *In re Kong*, 196 B.R. 167, 171 (N.D.Cal.1996). Such an inquiry is fact-intensive and can be made only on a case-by-case basis. *In re ABC Electric Services, Inc.*, 190 B.R. 672, 675 (Bankr.M.D.Fla.1995).

The above decisions would be particularly relevant if Debtor had hired Ms. Lowry as the professional in this case. However, Ms. Lowry was not a real estate agent nor was she associated with Realty West/Lane & Associates when Debtor retained James C. Lane to market his real estate on June 4, 2009, and again on October 1, 2009.

Under the case law cited by the Trustee, the question for this Court is whether the relationship between Debtor and James C. Lane is such to compel the conclusion that James C. Lane, or Realty West/Lane & Associates, has a relationship with the Debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of dealings between the parties. In other words, can the dealings between Debtor and James C. Lane be characterized as arm's-length.

Utilizing the standard urged by the Trustee, the Court concludes that James C. Lane was and still is a disinterested person. Nothing in the facts suggest that the relationship between Debtor and James C. Lane is anything other than arm's-length. The fact that Ms. Lowry lives with Debtor and is associated with Realty West/Lane & Associates does not taint James C. Lane's disinterestedness. Debtor is operating under the terms of a confirmed plan which requires Debtor to make a payment of $2,612,021.00 on December 31, 2012. Debtor proposes to have such funds available by selling his real property. Under the terms of his confirmed Plan, if Debtor has not sold his real property by July 1, 2012, he is then required to liquidate by auction all his property by December 31, 2012. The Court would expect that both Debtor and James C.

5

Lane are very motivated to secure a buyer for Debtor's property prior to July 1, 2012, because otherwise, any equity Debtor may have in the property will undoubtedly be lost.

For the reasons discussed above, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Chapter 12 Trustee's "Motion for Order Terminating Employment of Realtor James C. Lane of Realty West/Lane & Associates, to Direct Debtor to Negotiate New Listing With Big Sky Brokers, and Notice" filed June 14, 2011, is DENIED.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana